ST. LOUIS–SAN FRANCISCO RAILWAY CO., a corporation, F. H. Atkins, Leo V. Rheuark and J. N. Berry, Plaintiffs in Error,

v.

Mrs. Pearl FOX, Defendant in Error.

No. 38735.

Supreme Court of Oklahoma.

Jan. 10, 1961.

Rehearing Denied Feb. 28, 1961.

James L. Homire, St. Louis, Mo., Charles E. Daniel, Drumright, Franklin & Harmon, Oklahoma City, for plaintiffs in error.

C. Lawrence Elder, James E. Poe, Tulsa, for defendant in error.

BERRY, Justice.

In this action defendant in error, Mrs. Pearl Fox, hereafter referred to as "plaintiff", seeks to recover damages from plaintiffs in error, St. Louis-San Francisco Railway Co., hereafter referred to as "Frisco", F. H. Atkins, Leo V. Rheuark and J. N. Berry, who were defendants below, for personal injuries sustained as a result of one of Frisco's trains striking an automobile operated by plaintiff. The individual defendants above named were engineer, fireman, and conductor, respectively, of the train. The accident occurred at a point where Frisco's railway tracks intersect Second Street in Bristow, Oklahoma.

In so far as pertinent to the issues presented by this appeal, plaintiff alleged in her petition that defendants were guilty of primary negligence in maintaining a rough and unsafe crossing, in blocking the view of the crossing by freight cars, in failing to protect the crossing by a flagman, gates, automatic bell or warning device, in failing to sound a warning within 80 rods of the crossing and in operating the train at a speed in excess of 40 miles per hour in violation of an ordinance of the City of Bristow.

In their joint answer, defendants denied generally all allegations of the petition pertaining to negligence on their part and asserted that the accident was due solely to plaintiff's negligence, or was contributed to by plaintiff's negligence.

The case was tried to a jury. At the conclusion of plaintiff's case in chief, defendants interposed a demurrer to plaintiff's

evidence which was overruled. After defendants had made known that they did not intend to introduce evidence, they moved for a directed verdict, which motion was denied.

The jury returned a verdict in plaintiff's favor in the amount of $76,500 and judgment was subsequently entered against defendants in the amount of the verdict. From order of the trial court denying defendants' joint motion for a new trial, defendants perfected this appeal.

In their joint petition in error and in their joint briefs, the defendants assert in substance that the evidence fails to show primary negligence on their part, and if such negligence was in fact shown, the amount awarded as damages is excessive. Defendants also assert that the trial court erred in giving and in refusing to give certain instructions.

The uncontroverted evidence can be summarized as follows:

The accident occurred on February 22, 1958 at approximately 10 a. m. On the day of the accident plaintiff owned a 1940 model Chevrolet automobile which she used on said day in driving her sister, who was then 74 years old, to several places in Bristow. At approximately 10 a. m. she drove down Elm Street to a point where said street intersects Second Street in Bristow. At said point she made a left-hand turn onto the last-mentioned street in order to proceed in an easterly direction and thus pass over Frisco's tracks (three in number) which run in a general southwesterly and northeasterly direction at the point where same intersect Second Street. Upon reaching the main-line tracks her automobile stalled on same. Shortly after the automobile stalled, it was violently struck by one of Frisco's passenger trains which was traveling in a northeasterly direction.

As of date of the accident, plaintiff was 70 years old. She was then in good health. Her normal life expectancy was 12 years. She was capable of caring for herself and did her household work. She had lived alone following the death of her husband some ten years prior to the accident. She was not then employed and did not intend to seek employment.

As a result of the accident, plaintiff sustained serious and permanent injuries which permanently disabled her and which also caused her to suffer great pain. The medical and hospital expenses occasioned by the accident and resulting injuries were sizable and she may in the future be confronted with like expense.

In discussing and disposing of the several issues presented by this appeal, we will refer to other evidence which bears directly upon the issues discussed.

Defendants contend that the evidence wholly fails to sustain the allegations of plaintiff's petition to the effect that the crossing was unusually dangerous; that they were negligent in failing to install warning devices; and that they were negligent in spotting freight cars on tracks adjacent to the main-line tracks at a point several hundred feet southwest of the crossing which, to an extent, could have obstructed plaintiff's view of the approaching train. We agree. But the fact that plaintiff failed to establish these particular allegations of negligence is not fatal to her action if she in fact established other allegations of negligence that were the proximate cause of the accident.

Defendants contend that the evidence fails to establish that the crossing was rough or that the condition of the crossing was such as to cause an automobile to stall thereon.

As we read the record, there is competent evidence showing that the crossing was uneven to the extent that an automobile passing over same would spring up and down rather violently.

There was no direct evidence bearing upon the cause of the automobile stalling on the main-line tracks which apparently resulted from the fact that due to shock neither plaintiff nor her sister remembered anything that occurred for several minutes prior to the accident. The fact that the crossing was rough; that the tracks were

constructed on a fill and in order to reach the crossing it was necessary for plaintiff to drive up an incline, are circumstances from which the jury could have concluded that the automobile may have been traveling at a slow rate of speed when it reached the main-line tracks and that the roughness of the crossing caused the automobile to stall.

Defendants contend that the evidence bearing upon the issue of whether timely warning was sounded is negative in character and for said reason is without probative effect. We are unable to agree. Two witnesses testified in substance that they were in a position where they could have heard the sound of a bell or whistle if the whistle had been sounded or the bell had been rung at a point not less than 80 rods from the crossing; that they were paying attention to the matter of whether the whistle was sounded or the bell was rung and that neither was sounded at said point. The evidence therefore satisfied the rule announced in Missouri, K. & T. Ry. Co. v. Flowers, 187 Okl. 158, 101 P.2d 816, which is one of the cases that defendants cite and rely upon.

Defendants also contend that there was no competent evidence tending to show that the train traveled at a speed in excess of 40 miles per hour within the corporate limits of the City of Bristow, in violation of an ordinance of said city fixing the maximum speed of trains therein at 40 miles per hour. We are unable to agree.

A witness who was in a position to observe the speed of the train at a point some 500 to 650 feet southwest of the crossing, placed the speed of the train at said point at between 40 and 50 miles per hour. The train first entered the corporate limits at a point approximately 325 feet southwest of the crossing. Another witness who was in a position to observe the speed of the train as it traveled from a point 175 feet southwest of the crossing, placed the speed of the train at said point at approximately 50 to 55 miles per hour. Defendants urge that evidence that the train was traveling at a speed in excess of 40 miles per hour at a point 500 to 650 feet from the crossing does not tend to show that the train was traveling at a speed in excess of 40 miles when it reached the crossing. Defendants also urge that a person who first observed the train at a point 175 feet from the crossing was not in a position to estimate the speed of the train at said point or at the crossing. We are of the opinion that the referred-to evidence was competent for the purpose of showing that the speed of the train in Bristow immediately before the accident was in excess of 40 miles per hour. In the second paragraph of the syllabus to Atchison, T. & S. F. Ry. Co. v. Miles, 69 Okl. 138, 170 P. 896, we said that "Persons of intelligence and observation may testify as to the speed of a train without qualifying as experts; the lack of expert knowledge concerning speed of trains affects the weight to be given by the jury to such evidence rather than the competency of the witness."

On the issue relative to speed, the evidence shows that defendants became aware of plaintiff's stalled automobile at a time when the locomotive was some 150 feet from the crossing; that a warning whistle was then sounded and the emergency brakes of the train were then applied; that the front end of the locomotive was some 300 feet beyond the crossing upon the train being stopped following the accident. The fact that the passenger train apparently traveled some 450 feet following application of the emergency brakes thereon, in the absence of evidence showing the distance that it would take to stop a train traveling at a given rate of speed, tended to corroborate the evidence as to speed which we have referred to.

The defendants argue that if the evidence in fact shows that it failed to sound a timely warning in violation of 21 O.S.1951 § 1253, and that it violated the ordinance of Bristow relative to speed, they are nevertheless not liable to plaintiff because the evidence fails to show that either of said acts was the proximate cause of the accident. Defendants urge that the proximate cause of the accident was the matter of

plaintiff permitting her automobile to stall upon the main-line tracks. The defendants, therefore, urge us to hold as a matter of law that if the train had been operated at a lawful speed and a timely warning had been given, plaintiff nevertheless would have driven upon the tracks, or if upon the tracks when the warning was sounded she would not have had time nor presence of mind to drive her automobile off the tracks or leave the automobile and move to a place of safety. To our way of thinking, there was competent evidence which would sustain a negative answer to one or more of the suggested questions. It was the province of the jury to answer said questions and since one or more of the questions were answered in the negative, we are not at liberty to say that the complained-of acts on the part of the defendants were not the proximate cause of the accident. In Missouri, Kansas & Texas Railway Co. v. Perino, 89 Okl. 136, 214 P. 907, 910, this was said in the body of the opinion:

"As before stated, there was evidence to the effect that the train was traveling at a greater rate of speed than that permitted by ordinance, and there was a conflict in the evidence as to whether a warning was given by sounding the whistle or ringing a bell. The evidence also shows that the train ran past the station before it was stopped, thereby indicating that the engineer did not have the train under proper control. The question of primary negligence upon the facts presented was a question of fact for the determination of the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of primary negligence is considered one of law. * * *"

It was pointed out in St. Louis-San Francisco Railway Company v. Robinson, 99 Okl. 2, 225 P. 986, that it was the jury's privilege to conclude that if the bell on a locomotive had been rung the motorist would not have come upon the crossing and the crossing accident would not have occurred.

For other cases bearing upon the issue under direct consideration, see Kansas, O. & G. Ry. Co. v. Clark, Okl., 262 P.2d 426 and cited cases.

■ Defendants contend that the trial court erred in allowing plaintiff, as a part of her evidence in the case, to introduce portions of one of defendants' depositions as "admissions against interest" when said defendant was present in the courtroom and available to testify, citing and quoting extensively from the recent case of Cowan v. Pearson, Okl., 354 P.2d 194.

Admittedly, in the case at bar only a portion of the deposition was offered, and that not as a deposition, but as admission against interest of the parties defendant in the lawsuit, which, over the defendants' objections, the court admitted.

The portions of the deposition permitted in evidence as admissions against interest were statements made by the deponents (who were also defendants) pertaining to the condition of the crossing, rate of speed the train was traveling, the obstruction of the view of the crossing resulting from the freight cars spotted or left on the parallel siding and as to whether the whistle was blown on approaching the crossing, all of which, as stated by the defendants' attorney " * * * had already been established by witnesses and * * * by the plat" of the railroad, cars and crossing. Thus, leading to the inevitable conclusion that such evidence was, at most, merely cumulative and, if erroneously admitted, such constituted harmless error. Harry v. Hertzler, 185 Okl. 151, 90 P.2d 656.

■ The defendants offered no evidence in their behalf but relied solely upon their demurrers to the plaintiff's evidence and their motion for a directed verdict, all of which were overruled. The court therefore was at liberty to disregard all evidence favorable to the defendants and to consider only such evidence as tended to sustain the plaintiff's cause of action. The rules governing these matters are so commonly in-

voked that citation of authorities is unnecessary.

Under these circumstances, it becomes immaterial whether the rule be as contended by the plaintiff that admissions against interest may be read from a deposition, and that such admissions are competent even though the deposition, as a deposition, cannot be introduced because the party defendant is present in court, Harry v. Hertzler, supra, and Whitehead v. Jefferson, 51 Okl. 42, 151 P. 681, or as contended by the defendants, that under our holding in the Cowan v. Pearson case, supra, such admissions against interest were inadmissible.

■ We think that since the defendants stood on their demurrers and motions as previously shown, they are bound by the rule applied in actions of legal cognizance that if there is any competent evidence reasonably tending to sustain a jury verdict and judgment based thereon, such verdict and judgment will be affirmed by this court on appeal. We, therefore, deem it unnecessary to further consider this contention as same is, in our opinion, without merit for the reasons stated in Harry v. Hertzler, supra, wherein this court said [185 Okl. 151, 90 P.2d 658]:

"Assuming, without deciding, (that) his testimony on the former hearing was not competent as evidence in this case, we are unable to perceive any prejudicial effect thereof. It was purely cumulative and corresponded to the other proof properly admitted."

■ Defendants complain about the alleged error of the trial court in giving certain instructions to the jury and refusal to give certain requested instructions. We have carefully examined the requested instructions and those given by the trial court, and find that the theories of defense which were requested by the defendants were covered in substance in the court's instructions, and the instructions as a whole fairly presented the issues to the jury; therefore, there was no substantial error. We said this in the 5th and 6th paragraphs of the syllabus to Otis Elevator Co. v. Melott, Okl., 281 P.2d 408, 410:

"5. It is not error to refuse requested instructions where the propositions therein stated are substantially and correctly covered by other instructions given.

"6. There is no fixed rule or standard whereby damages for pain and suffering can be measured and the amount to be awarded therefor must be left to the judgment of the jury, subject only to correction by the court for abuse and passionate exercise."

We next consider defendants' contention to the effect that the verdict and judgment thereon is excessive.

As heretofore pointed out, plaintiff was 70 years old as of date of accident. It was stipulated that her life expectancy was 12 years. By so stipulating we assume that neither plaintiff nor defendants believe that the injuries which plaintiff received would serve to hasten her death. The total medical and hospital expenses incurred to date of trial were $2,744.08. It was estimated that if plaintiff elects to undergo a bone graft to one of her legs which was injured in the accident, additional expense in the amount of approximately $1,200 will be incurred. The evidence shows that plaintiff sustained several serious and permanent injuries as a result of which she suffered excruciating pain and that she will probably suffer some pain in the future; that the injuries sustained were such that she will never be able to do her housework and that the estimated expense of employing someone in the future to do said work and care for her will be approximately $8 per day. Plaintiff was not employed at the time the accident occurred and no damages based on loss of future earnings are claimed.

Plaintiff asserts that she proved actual damages in the amount of $2,744.08 paid as medical and hospital expenses; $125 damage to her automobile; damages in the amount of $35,040 representing cost of care, etc., at $8 per day for 12 years; that said damages would aggregate $37,909.08;

that damages awarded for past and future pain and suffering aggregates approximately $38,500; that this is not an excessive amount under the evidence in view of the fact that there is no yardstick by which such damages can be measured.

In arriving at the figure of $38,500 plaintiff overlooked evidence to the effect that plaintiff had employed a person (who was said not to be entirely satisfactory) to care for her and to do her housework at $3 a day; that it is entirely possible that even if plaintiff had not been injured, advanced age and attending infirmities might necessitate employing someone to care for her and do her housework prior to her reaching 82, and that an allowance for future damages must be reduced to its present worth. As sustaining the statement last made see Gallaspy v. Warner, Okl., 324 P.2d 848 and 15 Am.Jur. "Damages", Sec. 24, p. 416. For reasons given, we are of the opinion that plaintiff has failed to show actual damages in the amount of $37,909.08 or that damages for past and future pain do not exceed $38,500.

In determining whether a verdict in an action for personal injuries is excessive, the court will consider all relevant circumstances such as the nature and extent of the injuries; pain endured and that which may be endured in the future; expenses incurred and those which may be incurred in the future; the age of the injured person; his earning capacity prior to injury and the extent of the impairment. See 15 Am.Jur. "Damage", Sec. 209, p. 627. As heretofore noted, the last above-mentioned element of damage is not here involved.

In her argument addressed to the issue under consideration, plaintiff says in substance that there is no yardstick by which damage for pain and suffering can be measured, and that the determination of such damages rests in the discretion of the jury. Plaintiff quotes from Denco Bus Lines, Inc. et al. v. Hargis, 204 Okl. 339, 229 P.2d 560, 563, to the effect that "Compensation for pain and suffering is hard to measure, and must rest in discretion of the jury, guided by common sense."

We did not hold in the last-cited opinion, and for that matter, we have never held in any opinion that in the matter of a jury awarding damages for pain and suffering "the sky is the only limit". To the contrary, and as reflected by our opinion in Sloan v. Anderson, 160 Okl. 180, 18 P.2d 274, where a verdict awarding damages for pain and suffering was found to be excessive, we have repeatedly recognized the provisions of 23 O.S.1951 § 97, to the effect that damages in all cases must be reasonable and that no more than reasonable damages may be awarded.

In Southern Kansas Stage Lines Co. v. Crain et al., 185 Okl. 1, 89 P.2d 968, 970, this was said:

"(3) The question of whether a verdict in a given case is excessive must be determined from the facts in the individual case, and under the evidence herein we are of the opinion the verdict was grossly excessive and are justified in inferring that there was prejudice and passion on the part of the jury from the magnitude of the verdict. Missouri, O. & G. R. Co. v. Parker, 50 Okl. 491, 151 P. 325; Chicago, R. I. & P. R. Co. v. Warren, 132 Okl. 107, 109, 269 P. 368; St. Louis & San Francisco R. Co. v. Hodge, 53 Okl. 427, 157 P. 60."

We are of the opinion that the amount of the verdict in the instant case indicates that the jury was in part motivated by prejudice and passion and for said reason the defendants are entitled to a new trial unless plaintiff, within 30 days after the mandate herein reaches the trial court, agrees to a remittitur of that part of the judgment, which, exclusive of costs, is in excess of $50,000.

The defendants contend that the trial court erred in other particulars, but finding no merit in said contentions we deem it unnecessary to discuss said contentions.

Affirmed subject to remittitur of $26,500, otherwise reversed and remanded for new trial.

BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON and IRWIN, JJ., concur.

WILLIAMS, C. J., and JACKSON, J., dissent.